Arguments not to exceed 15 minutes per side. Mr. Stengel for the account. Good morning. Thank you. Mike Stengel of the Memphis, Tennessee Bar. And it's my privilege to be here on behalf of Calvin Reid this morning. There are a couple of reasons, two reasons to vacate the convictions. Frankly, I'd like to focus on the problem with the four dire and the peremptory challenges. Or at least start there. I think this court should review the issue de novo. The United States has suggested that it's subject to abuse of discretion review, but this court in United States v. Gibbs has said that the abuse of discretion review applies only when the minimum requirements of Rule 24 have been met. And in this case, this court has also said that the denial of the right to exercise peremptory challenges is a structural error, not subject to harmless error review. That was in United States v. McFadden. Here, the district court did not comply with the minimal requirements of Rule 24b. The negative impact was only on Mr. Reid, the defendant. It was not a party neutral impact. There was no negative impact on the government. When Mr. Reid objected at the erroneous encouragement of the government, the district court refused to check the record. And so what happened was being told, as voir dire was beginning, that he would be given ten peremptory challenges. The rules were changed in the middle of... He was never denied a further challenge, though. There was no point in which the judge said, you've used him up, you can't challenge so-and-so. Is that correct? That is absolutely correct. I've just got to say I'm having trouble seeing how there's even assumed prejudice. There's just categorically no prejudice, isn't there? I would disagree for... What conceivable prejudice was there? Was it that he would have felt good if he'd left two on the table instead of one? No, Your Honor. The first thing is that improperly taking one away utterly destroys the appearance that Mr. Reid is going to be given a fair trial run by an impartial judge according to the rules. The identical twelve people are going to be deciding this case if this error had not been made. Is that correct? Not necessarily. Why not? Because knowing that there were still potential jurors out in the back of the courtroom who had not yet been called, when the only decision that we can assume, and it has to be an assumption, the government still had several challenges left when the last round of peremptories occurred. As the Supreme Court said in addressing peremptory challenges, this was a situation where Mr. Reid had no choice when that peremptory was taken from him. Not a hard choice. He had a hard choice. I think Judge Rogers is asking the same variation, the same question. Rule 24 says nothing about the consequences of being denied one. It says nothing about the judge miscounts. It's just silent about that. That's correct. We're on the same page there. I assume we're on the same page that that means criminal rule 52 takes over, so harmless error. There is such a thing as harmless error, right? There is such a thing as harmless error. Rule 24 is silent about this. Then we go to the general harmless error rule, right? I disagree because of this court's statement in United States v. McFadden where it said that it is virtually impossible... Is that a Batson case? It is a Batson case. It is a Batson case. Frankly, all of the cases cited... I'm struggling with why it's relevant to us to bring up constitutional cases when we're talking about a rule. Rule 24 by itself is a rule based... The number is pulled out of thin air and the states have different numbers. The number 10 is not a constitutional number, right? That's correct. So I just don't understand why this isn't a rule based problem. And I'm really struggling why the constitution or constitutional cases enter into it. The rule doesn't tell you what happens if you miscount. Everyone agrees it's not a constitutional requirement. That takes you to rule 52, so I just don't understand why we don't have to apply harmless error. This court may well choose to apply harmless error. I think it's inappropriate based upon the case law which discusses how peremptory challenge cases are addressed. I will admit that this is sort of a purple-striped zebra case in that it's sort of hard to fathom until you read the record that when it boils down to it, people didn't count to 10 is what happened properly. And so it's unusual to find a case dealing directly with this. But I think in this case that because it's so difficult to assume whether or not there was an impact that in discussing peremptory challenges, albeit in the constitutional context in Batson, this court has said that because you... Don't even talk about cases. How is it harmful? What's the theory of harmfulness? You know more about trials than I do for sure. So what are the practicalities that show harm? The chilling effect on Mr. Reed. He gets to a point where they are at the last round of peremptory structure. Can I ask you to answer this? Is this one of these things where you do one juror at a time or are they done in some sort of group? No, they were done in a group. And once there was a full panel who was qualified for cause, then a round of peremptories by both parties was submitted. And there were no backstrikes. So the seats that were filled at that point were permanently filled. And so there were a couple of rounds. And I believe it was on the third round where they were down to the final strikes for the day. At the beginning of the third round, what was the situation? How many people were permanently on the jury and how many people were still subject to... I'm asking for how the system worked. My recollection is not necessarily accurate. I believe that there were ten people seated at that time. I did not try the case. There's two seats left. There were two seats left. Either one or two. If there's one, it seems like there can't possibly be any harm because... Well, at that point, if... Because the person that is replaced for the one that he rejects might also be objectionable. And then that person that he objects to might be replaced by someone else. And in order to, you know, the bird in the hand is worth two in the bush kind of idea, he might have not objected to somebody that he might otherwise have objected to. Is that the idea? To some extent. But I think that it's absolutely critical that Mr. Reid was erroneously down to just one and that the government had several. But, I mean, there's... So are you... I'm trying to figure this out. Because all I want to know, I think it's like Judge Rogers, just the practicalities of this. So your theory is, you know, you're playing a card game and you've got a trump card and the question is when to play the trump card. And if you wait too long, the trump card potentially is not useful. Are you making the point that he... When you say there were some, let's say ten, permanently seated at that point, he couldn't go back and strike one of those ten? No. No. Whoever... So at the end of, you know, everyone's just about done. You've got twelve there. You happen to have one peremptory left. Am I not right that you can strike any of the twelve at that point? No. Not in this trial. The way that the judge did it, once somebody had not been struck by either party, they were on the jury. So with this... But that's saving the trump card in the card game problem. You're not sure, you know, if you have three trump cards, you might use one of them then. If you mistakenly think you only have one, you save it for this last round, that's the problem? No. I'm trying to help you, just so you know these are supposed to be friendly questions. That's what you're arguing. I understand. I don't know why you're resisting me. It's also key... I appreciate the help, Your Honor. It's also key that the government had five left. So the only decision that we can be certain that Mr. Reed was making at this time, mistakenly being told he only had one left, was that whoever was there, and whether it was one or two, that he had the opportunity to strike, was less objectionable to him than whoever was in back that would replace if the government used one of the five that it had left on those. And that's where the harm comes in. Trust to God, I've picked hundreds of jurors as a trial lawyer and as a trial judge. I don't understand what you're saying. You've got one challenge left. If you'd have used it, what would have happened? They still had five, right? That's correct. And they could have used the five any way they wanted to. Presumably. They could have used the five on that last one or two that was being replaced. The government also could not use the five on the ten that had already been seen. But if you had two and you'd have used both of those, they still would have had five that they could have used. That's absolutely correct. So where's the prejudice? The prejudice is in not having the two that the rule provides. Not knowing that you had the two. Well, he had asked for the two. You've got two seats left, or maybe even hypothetically one seat left. You are disadvantaged if you think you only have one when you really have two because you're more conservative about challenging somebody in the face of whoever else. And you don't know who's next in line. Is that the idea? Absolutely. It's like a draw from the deck. Yeah, but the five versus two or one was a problem of the prior counsel's own making because the government only gets six. So defense counsel was using these things right and left. Forget the mistake point, right? Because they'd obviously used eight. Well, Mr. Reid had used eight of his ten. So it's an eight versus one at this first round. So the reason why there's five is the government... Well, there's actually two rounds, but... Well, getting up to the point we're talking about where the alleged prejudice occurs, you're relying on the five point? Well, the government has five because it only used one up to then, right? That's correct. I don't understand how that can exaggerate the prejudice. I mean, that's part of the card game. I mean, if you're nervous about the government having a ton at the end, that has nothing to do with this one versus two problem. You shouldn't be spending eight on these first two rounds if you think that's strategically important. I don't understand that. Do you understand the point I'm making? I mean, they had five because they only used one. They were careful about how to use these trump cards. I understand that. But being denied... being reduced to ten, or being reduced from ten to nine, not only changed the ratio, but what it did was it meant that when you're down to picking those last two, he only has improperly one left, and he doesn't control how many the government wants to. I think the upshot of Judge Sir Heinrich's question is that if he had two, he would still have two today. Because he was satisfied at the end. Despite this anxiety about what the government was going to do with its five, is in this case, it seems to me, instead of having one left, he would have had two left. That's how it played out. I don't think that we know that without speculating. Because unlike the Supreme Court case that the government relied upon, there was no question at the end by the judge about whether either party had any objection to the jury that was... Tell me if I've got... Sorry to keep asking these questions. I know we're going longer, but I'm trying to figure this out. I'm actually thinking the theory you're advocating of prejudice is opposite. In view of this tiered problem, you have no theory of prejudice in this case because you didn't even use the one. So it's not at the last stage you were allegedly prejudiced. You were prejudiced at the prior two stages. Well, you used eight, but could have used nine. That's not even the theory you're raising today. But that's the only one that seems to make sense. How's this to make sense of your argument? And I know we're keeping you over, but it's interesting. Let's say you only have one spot left instead of two. And you think you only have one objection, one challenge left. And you get somebody who you're kind of uncomfortable with, but it's probably better... It's better than somebody that you really object to. So knowing that you have yet another one for the possibility of someone you really object to, you let that person come on. And then that person is on, but it's not somebody that you would have objected to if you had known that you had two. In that sense, you have a little bit of prejudice. Is that the argument? That's the argument I have been trying to articulate. You know what's wrong with this? This is all guessing by golly. Trial counsel tried to make some record of this? I mean, saying, Judge, if the next person comes on as X, I'm prejudiced because of... Where do we get any facts to draw this so-called prejudice from? The closest there is in anything in the record, and you have to remember that Mr. Reed tried the case pro se. So he himself was trial counsel. The closest there is in anything in the record is when the colloquy between him and the judge occurs, and I don't remember which one started it, but Mr. Reed essentially says, I've now used eight, and the judge says, no, you've used nine. And there's a discussion about whether the record should be checked, because it had been very recent at that point, the prior round. Chief Judge McCullough at the time said, there's no need to check the record. I remember you have written seven, and you've used two orally at the bench, and he was encouraged by the prosecutor, not Ms. Ireland, but her co-counsel, said, judge, your memory is correct. I've been taking notes. That's the closest there is to anything in the record when Mr. Reed asked. I understand you can debate that, I suppose, but how do we grasp some kind of prejudice on what could maybe be, might be, I don't know if it would be. I mean, if he used his last preemptory, maybe he'd have got the best juror he possibly could have. You know, how do we know that's not true? I don't think that there is an answer to that in the same way that... No, but you kind of want us to make that decision with nothing, it seems to me, to go on. Well, although Judge Sutton has distinguished the constitutional cases, I think that it's important that the rule was simply violated, and it was to the detriment of the defendant. Thank you. Thank you, counsel. May it please the court. Counsel. Deborah Ireland for the United States Western District of Tennessee. I'd like to address the argument regarding jury selection briefly and then move on to calculation of the criminal history, if I may. I was lead counsel at trial. Mr. Reed was pro se. A mistake was made in the way the preemptories were counted. It's not a constitutional problem. That's the reason that we have the four cause challenges. That's to ensure an unbiased jury. The rules of preemptories are a criminal procedure rule that is an additional, almost like a prophylactic, to make sure that if there is a mistake under the cause challenge system, that it can be accommodated and a jury can still be seated that isn't biased for or against either party. So it really should be a harmless error analysis. It is not of constitutional dimension, and while you can take things out of context in some cases or dicta in some cases, regarding any error in jury selection being... I mean, just the word is harmful. Why isn't it somewhat harmful to mistakenly think, well, it's not even the defendant's fault. It's not. To hold mistakenly that you have won when you really have two. I mean, if you think of it like a card game and they're trump cards, why wouldn't... I mean, isn't that going to affect how you play the game? If you extend everything, as with evidence, all evidence is prejudicial in one way or another, I think anything can be considered potentially harmful. The situation when this occurred was at the end of a day of jury selection, which had been approaching six hours in court at that point. It was near the end of the day. The panel had almost been exhausted, and there would need to be called additional jurors for the following day to seat alternates. I mean, that's the degree to which this had been dealt with in a very painstaking and meticulous manner. In fact, if you'll notice on the record... Is there something on the table for you to think about and for your opposing counsel to think about? Yes. To me, I think the way this works is it is harmful in the sense of strategy. I mean, the way you explained it, once there are these permanent seatings of certain jurors, and you want to hold on to peremptories for later rounds, I actually think there is a theory of harm in terms of the strategy of using peremptories, and the key point is when, the idea of wanting to hold some at the end. But I guess what I think this boils down to is a situation where, because we can't actually figure out these different jurors and what they did, we don't know about their jury deliberations, that in a miscounting sense where you're left with at least one left, it's always prejudicial or it's never prejudicial. It's one of those two, because I can see a harmfulness point, but I think that harmfulness theory would apply in every single case. So every time there's a miscounting, it doesn't matter whether you're left with some, it undermines your strategy, and so it always has harm, which starts to make it look like a structural constitutional error, which is why that would be tricky for the defendant. But I don't know, just logically, it seems to me it's either one or the other. Respectfully, I understand what you're saying, but when you've still got a peremptory left to use, and you've run out of jurors to strike, you've got a panel that has passed constitutional muster, and you still had options that you chose not to use. I don't see that that demonstrates harm. Judge Sutton's point, I think, is when you made that last choice with respect to the last one, you did it with wrong information, and you might have done something different. You might have played it differently. You might logically, very logically, have played it differently. Now maybe that's not what the rule was intended to protect. I guess you could argue that. It's kind of hard to argue that you definitely would have played it the same way, given the way that you all have described the structure here. I acknowledge that. But again, that's an internal process. You agree with that? Yes. I acknowledge there could have been a strategy difference. So to say that this is the same jury that you would have had if there had been no error is not 100% necessarily the case. Because if the strategy had been different, then conceivably you might have selected differently and had a different jury because you knew what you were doing when you made that last choice. This last person that was only somewhat acceptable to you might not have been the person who got on the jury. Now true, it might have been somebody less acceptable in the end, but he didn't get the choice that the rule gave him, not the Constitution, but the choice that the rule gave him. Why, I guess the question I ask, is why doesn't the rule, if it has underlying policies, why doesn't the rule have to be complied with? I think the answer is in the transcript. If you'll look at the transcript of jury selection prior to this situation, Mr. Reed actually used a peremptory challenge on someone who had child care issues but was otherwise a qualified juror, and the court was not going to release him. And Mr. Reed said, I'll let him go. I'll use one of my challenges. It was done with the other person. This is to show that he wasn't really using strategy? Yes, Your Honor. Yes. Absolutely. Let me ask you, as I understand it, the judge was, after you passed for cause in your peremptory, he considered that particular juror part of the panel. It was going to decide the case. Yes. And so I heard your colleague say 10 were seated, and he still had one preemptory left, correct? I don't know the numbers off the top of my head without referring back to notes that I do have. Well, if that were true, and that's what I thought I heard him say, then the 11th comes on, and the defendant could have used his preemptory then,  And so that person becomes part of the panel. Then the 12th comes on, and he still has his one preemptory left, and he chooses not to use that one. Is that what happened? That is what happened, Your Honor. So in all cases, he's got his preemptory to use. Yes. And that's why there's no harm. I think Judge Rehinerich's questions show that the Reed's theory of prejudice doesn't work here because Reed's focusing on the last two. So I think he's right. I'm just saying... I do too, Your Honor. I think he has the wrong prejudice theory. The prejudice theory in this case would be the first 10. But there were no backstrikes allowed. Pardon me, Your Honor. Where if his theory all along is, I want to save one for this last round, he's not arguing this point, but I'm just saying, kind of from a game theory perspective, we don't know whether he would have wanted to strike one of those 10. If his theory all along was to keep one at the end, he really had two. So he wasn't able to follow that strategy. However... But if he's not arguing he's unhappy with the first 10, he's not arguing that he's unhappy with the first 10. Exactly. It was very clear from the start there would be no backstrikes. You made your challenges for cause. You would then make your preemptory challenges. And anyone who passed through that round was on the jury, period. End of discussion. Your strikes were then to be used. Your preemptories were then to be used on the new panelists who were filling in for those who had been struck with preemptors. You acknowledge there's a type of strategic disadvantage that might have led to a different 12th juror. I thought you acknowledged that earlier. I acknowledge that if strategy was being used in that way, that that might have altered a strategy. All right. But I think it's very speculative. It's not 100% accurate to say he got the same jurors he would have got... He necessarily would have got the same 12 jurors he would have gotten if he'd known that he had two left instead of one. That's correct, Your Honor. At least playing the game at the last one, I think it's different, what I'm thinking, from what Judge Sutton is talking about, the first 10. With respect to the very last one only, it's possible it could have been somebody else if he had known he had two. It's possible. But it is getting a bit far afield into possibility. It's far afield. It's something, maybe not very weighty. So then the question is what do you do with that when the rule says you get X? I don't know what you do. I think ultimately it's a harmless error question. And again, the things that might be speculated upon are not what's before you today. We have what we have. Do you have a good analogy? Our whole point is there is some harm. So to come back and say it's a harmless error question, the whole debate for the last 10 minutes is showing you there are ways in which there was some harm. It might be not huge, but the word harm is not inaccurate. So what do you do with that? For you to come back and say harmlessness, that's just a conclusion after we've all agreed there is a theory of harm. I would again refer you to the record and the discussions that took place prior to this situation in which Mr. Reed was using his peremptories because he wanted to be nice to someone and let them out because they had child care issues. That's not evidence of a strategy. That's evidence of someone operating pro se who doesn't respectfully know what he's doing because he's not an attorney. I don't think we're going to hold his kindness against him. No, I'm not asking you to. But I'm saying that it doesn't indicate that he was doing jury selection with an eye towards strategizing. I'm still lost at the strategy. I mean, he doesn't know what he's going to pick up if he uses his preemptory. It could be somebody terrible for him or no different than the one he got. So what's the strategy? Well, the strategy under the analogy that Judge Sutton is using with the card playing, deciding apparently that he would want to have two left so he always had a choice as to whether or not to use and had that cushion essentially. The strategy being I'm going to reserve a cushion and when you're down to one, you don't have that option. I believe that's what Judge Sutton is getting at. But if he used the one on the 11th, if there were 10 seated, then that argument would make sense. But since he passes on that one and still has a preemptory on the 12th and he doesn't use it, that indicates to me that I don't see the strategy. That's the government's position, Your Honor. If there are no further questions on this matter, may I address the criminal history score? During the first sentencing hearing on February 28, 2013, the exhibits that were submitted to the court included a document that answers the question of custody. The 15-year look-back period includes the date December 13, 1996, that is within 15 years of the date cited in the indictment. At that time, Mr. Reed was in custody and it can be noted by one of the documents that was submitted as an exhibit at that hearing. That document reads that by the allowance of good time disciplinary credits, the above-named Mr. Reed is now eligible for termination on one of his sentences, that sentence being a 2-year to 4-year sentence for possession of a controlled substance. He was to continue to serve on a 2-year to 5-year sentence for larceny in a building and for a 1-year and 6-month to 7-year and 6-month sentence for escape from prison. So on that December day, Mr. Reed was in custody. He was serving two sentences that were separated by an intervening arrest and the escape sentence, which was to run consecutive, was to begin at the expiration of the sentence that terminated on that day. So it is clear that the criminal history points as assessed are accurately assessed. Mr. Reed was in custody within that time period as clearly demonstrated by the document that was submitted as an exhibit at that hearing and it identifies the sentences, two of them which were being served concurrently and one which was to begin at the expiration of one of those sentences as being in place at that time. So we would argue that the criminal history score is accurately calculated and that the court's calculation should stand. I realize that's kind of a confusing issue. Finally, briefly addressing the 404B matter. In many cases, 404B issues can get very confusing. In this particular case, the government believes it's a very clear situation. The reason the evidence was admitted, the evidence that Mr. Reed had had sexual intercourse with a 13-year-old victim prior to the day that he took her to Mississippi to again have sex with her is because it was part of the government's burden to prove his intent. Intent is something that can be known only by outward actions because it's within the mind of the defendant. It was one of the things we needed to prove. The evidence that was admitted had occurred near in time, involving the same victim, and it was admitted for a proper purpose, as the court noted. And so we would submit to your honors that this is appropriate and this is not a situation in which a 404B error was committed. Having no additional questions, we ask that the court affirm the verdict and the sentence as handed down. Thank you, counsel. Thank you. We have some rebuttal time. I'll be very brief in trying to address what I think the panel was getting at. Judge Heinrich, I'll start with your question about Mr. Reed accepting juror 11 and then 12. I want to be clear that jurors 11 and 12 were considered at the same time. This was not done in serration 1 through 12. With respect to counsel's argument about strategy in a discussion about child care, I think that the government is speculating with respect to Mr. Reed's strategy. He may well have used a peremptory on somebody with child care issues because he wanted jurors who didn't have other pressing matters on their mind and would pay attention. So there may well have been strategy there. With respect to your question, Judge Sutton... He may have just been a nice guy. He may have been a nice guy. With respect to whether there is always or never prejudice, I would suggest that the answer should be that there is always prejudice. It's like a constitutional structural error. That's what it becomes. Because that's exactly what that is. Well, I realize that it is not constitutional. However... I'm not saying that. I'm saying, doesn't that seem odd that a rule problem, a violation of a rule, gets treated for harmlessness purposes like a constitutional structural error? That's what's odd to me. We know it's not constitutional, so that's what makes it slightly odd. And then it makes it really odd to call it a structural type error in the sense that it always requires a new trial. It seems pretty amazing. I agree with that analysis. The reason that I think that there is always prejudice is because this is a situation where Congress mandated this rule and it is an objective decision. This is not subjective. We're arguing about whether the district court properly excused somebody for causal or improperly denied an excusal for causal. There's simply no discretion here. It should be 10. This was the court's fault, encouraged by the government, and it harmed Mr. Wren. Wouldn't it make more sense to say that it should be structural error, not because it's constitutional or because it's non-discretionary, but because it's impossible to tell whether there was actual error or not for the reasons that Judge Sirhiner says? There's no way to know. That's usually the rationale for having something be structural error, is there's no way to know. That was going to be my final point, is that in a situation like this, what we have to do is speculate. In the same manner the government was speculating that Mr. Reed didn't have strategy when he exercised one of his peremptories. I think that that is a problem. We can speculate on whether it would have been a better or worse juror all day long, but there was harm, and it changed the rules for Mr. Reed. Thank you, counsel. Thank you. The case will be submitted. We appreciate your advocacy. I see you were appointed under the Criminal Justice Act. We appreciate your advocacy. Thank you. You may adjourn the court. This honorable court is now adjourned.